UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 23-CV-80644-ROSENBERG

FREDERICK H. MILLER,

    Plaintiff,

vs.

NAVY FEDERAL CREDIT UNION and
EXPERIAN INFORMATION SOLUTIONS,
INC.,

    Defendants.
_____/

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**JURY DEMAND**

1.    Plaintiff, FREDERICK H. MILLER ("Plaintiff" or "Mr. Miller") files his First Amended Complaint against NAVY FEDERAL CREDIT UNION ("NFCU") and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.    Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Palm Beach County, Florida.

**PARTIES**

4.    Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Palm Beach County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.    Defendant, NFCU, a credit union headquartered in the State of Virginia with minimum contacts in the state of Florida, which are more fully described below.

6. Defendant, NFCU uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies. Trans Union, Equifax, and Experian shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs."

7. These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which has effects on consumers and their credit reports within the state of Florida.

8. Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### The Fair Credit Reporting Act

9. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

10. Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

11. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept

confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

12. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

13. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

14. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

15. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

16. In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."15 U.S.C.S. § 1681i(a)(4).

17. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

18. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

19. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

20. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

21. The terms "consumer report", "credit report", and "consumer credit report" are

used synonymously herein.

## FACTUAL ALLEGATIONS

22.     On or about November 15, 2022, Mr. Miller applied for and was approved for a $5,000 line of credit at Home Depot, which he considered low based on what he has been approved for in the past.

23.     After being approved for the Home Depot credit card, Mr. Miller reviewed his credit files with the three major credit reporting agencies known as Equifax, Experian, and Trans Union ("CRAs") when he noticed a fraudulent account with NFCU listed as the furnisher of information.

24.     The account was opened on July 30, 2022, with $8,900 credit limit. When Mr. Miller checked his credit reports with the CRAs he noticed the NFCU account had about $4,500 in charges, was past due, and was being reported as a negative account.

25.     NFCU's qualifications for membership are specific to current or retired members of the armed forces, which includes that person's families and household members. *See* https://www.navyfederal.org/membership/eligibility.html (last visited April 12, 2023).

26.     Mr. Miller is neither a current, nor retired member of any branch of the armed forces.

27.     Mr. Miller tried to have the NFCU account information removed by disputing the information to the CRAs sometime between November 15, 2022, and December 31, 2022 where he advised them the account was opened fraudulently, provided an FTC Identity Theft Affidavit along with proof of his identity ("Initial Disputes.").

28.     On January 3, 2023, Mr. Miller contacted the West Palm Beach Police Department ("West Palm PD") to have a police report completed. A redacted copy of the police report is attached as Exhibit "A."

29. On or about January 6, 2023, Mr. Miller was denied a credit limit increase for one of his active accounts with American Express ("Amex"), but he was denied. A redacted copy of the denial letter from Amex is attached as Exhibit "B."

30. The denial letter states an Experian report was accessed and among the decisions to deny Mr. Miller for an increase was his FICO score being 645, with the following key factors as reasons to support the denial:

**Information about Your FICO Score**
We obtained your FICO score from EXPERIAN and used it in making our credit decision. Your FICO score is a number that reflects the information in your credit report. Your FICO score can change, depending on how the information in your credit report changes. On December 21, 2022, your FICO score was 645. The FICO score ranges from 300 to 850. The following are the key factors that contributed to your FICO score:

- You have a serious delinquency on one or more of your accounts
- The time since your latest reported delinquency is too recent or unknown
- The length of time your accounts have been established
- The ratio of loan balances to the loan amounts is too high
- There are too many credit inquiries on your report in the last 12 months

31. When Mr. Miller applied for the credit limit increase with Amex, the only serious delinquency on his Experian credit file was the NFCU account, which he had previously disputed before applying for the increase described in Exhibit "B."

32. On January 21, 2023, Mr. Miller reviewed his Experian credit report and noticed the NFCU account was still being reported negatively and was also listed as previously being in dispute. A copy of Mr. Miller's January 21, 2023, Experian report is attached as Exhibit "C."

33. Upon receiving the Initial Dispute, Experian relayed that correspondence to NFCU, who failed to conduct a reasonable investigation, and then furnished inaccurate information back to Experian.

34. On or about January 24, 2023, Trans Union sent Mr. Miller the reinvestigation results of his Initial Dispute, which stated the information being reported by NFCU was verified as

accurate. The information regarding Mr. Miller's reinvestigation results from Trans Union appeared with the following image

```
File Number:      376372395                    Page 5 of 7
Date Issued:      01/24/2023
```

**Your Investigation Results**

INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED: The disputed item(s) was verified as accurate; however, other information has also changed.

NAVY FEDERAL CR UN #406095548495**** ( POB 3700, MERRIFIELD, VA 22119-3700, (888) 842-6328 )
We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; High Balance; Past Due; Pay Status; Terms; Maximum Delinquency; Rating; Historical Trended Data. Here is how this account appears on your credit report following our investigation.

| | | | |
|---|---|---|---|
| Date Opened: 07/30/2022 | Balance: $4,566 | Pay Status: | >Account 90 Days Past Due Date< |
| Responsibility: Individual Account | Date Updated: 01/23/2023 | Terms: | $92 per month, paid Monthly |
| Account Type: Revolving Account | Payment Received: ($0) | Date Closed: | 12/01/2022 |
| Loan Type: CREDIT CARD | High Balance: $4,566 | | >Maximum Delinquency of 90 days in 01/2023 for $267< |
| | Credit Limit: $8,900 | | |
| | Past Due: >$267< | | |

Remarks: DISP INVG COMP-CONSUM DISAGRS; CLOSED BY CREDIT GRANTOR
Estimated month and year that this item will be removed: 10/2029

| | 12/2022 | 11/2022 | 10/2022 | 09/2022 | 08/2022 |
|---|---|---|---|---|---|
| Rating | 60 | 30 | OK | OK | OK |

35.    Since Mr. Miller was unsatisfied with having the NFCU account remain on his credit files, he disputed the information again between February and March of 2023 to Experian and Trans Union (hereinafter "Second Disputes.")

36.    Sometime after receiving the Second Dispute, the NFCU account has been removed from Mr. Miller's Experian and Trans Union credit files.

37.    However, on March 21, 2023, Mr. Miller was denied a second credit increase through Amex based on information in an Experian report. A redacted copy of the second denial letter from Amex is attached as Exhibit "D."

38.    One of the reasons for the second denial was "based on your credit report, you are or were past due with another creditor(s)." When Mr. Miller received the second denial from Amex, all his open and closed accounts on his credit file were all paid as agreed and never late.

39. Had Mr. Miller been approved for a credit line increase the second time, he would have the option of moving his available credit to his other Amex account which is addressed in the first denial from Amex in Exhibit "B."

40. NFCU has been furnishing negative, inaccurate, and/or misleading information (hereinafter "Inaccurate Information") regarding the NFCU account to Experian and Trans Union.

41. Relatedly, Experian's reliance on NFCU has caused the Inaccurate Information to be sent to third parties who have viewed Plaintiff's credit reports when evaluating his credit worthiness.

42. The dates when the Inaccurate Information was viewed are reflected as "Regular Inquiries" or "Hard Inquiries" on Plaintiff's consumer disclosures following the Initial and Second Disputes.

43. One or more of the enumerated "Regular Inquiries" and/or "Hard Inquiries" have resulted in damages to Plaintiff in multiple forms, including economic and non-economic harm.

44. Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

### *Plaintiff's Injuries-In-Fact under the FCRA*

45. Defendants' actions and omissions have resulted in Mr. Miller having a decreased credit score during the time when he was applying for credit or insurance with the NFCU account being present.

46. This negative effect on Plaintiff's credit score subjected him to either being denied credit/insurance or receiving less favorable credit/insurance terms than he otherwise would when he applied after disputing the Inaccurate Information.

47. Further, courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *Rothman v. U.S. Bank Nat'l Ass'n,* No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *Green v. RentGrow, Inc*., No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *Coulbertson v. Experian Info. Sols., Inc*., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum,

Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

### COUNT I – VIOLATIONS OF 15U.S.C. §1681s-2(b) AGAINST NFCU FOR DISPUTE(S) TO EXPERIAN

48. Plaintiff incorporates by reference his allegations in Paragraphs 1 – 7, 9 – 13, and 18 – 47 as if fully set forth herein.

49. NFCU is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

50. NFCU violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by Experian.

51. Additionally, NFCU violated §1681s-2(b) by failing to accurately respond Plaintiff's disputes forwarded by Experian concerning the NFCU account.

52. As a result of NFCU's violations of the FCRA, Plaintiff has been damaged.

53. Plaintiff's damages include damages include emotional distress associated with the NFCU account not being corrected, credit denials, credit being granted at increased rates as the result of the NFCU account being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

54. NFCU negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

55. Additionally, NFCU committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

56. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against NFCU in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

recover under 15 U.S.C. §1681o.

### COUNT II – VIOLATIONS OF 15 U.S.C §1681s-2(b)
### AGAINST NFCU FOR DISPUTE(S) TO TRANSUNION

57. Plaintiff incorporates by reference his allegations in Paragraphs 1 – 7, 9 – 13, and 18 – 47 as if fully set forth herein.

58. NFCU is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

59. NFCU violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by Trans Union.

60. Additionally, NFCU violated §1681s-2(b) by failing to accurately respond Plaintiff's disputes forwarded by Trans Union concerning the NFCU account.

61. As a result of NFCU's violations of the FCRA, Plaintiff has been damaged.

62. Plaintiff's damages include damages include emotional distress associated with the NFCU account not being corrected, credit denials, credit being granted at increased rates as the result of the NFCU account being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

63. NFCU negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

64. Additionally, NFCU committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

65. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against NFCU in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

recover under 15 U.S.C. §1681o.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

66. Plaintiff incorporates by reference his allegations in paragraphs 1 – 4, 9 – 11, and 14 - 47 as if fully set forth herein.

67. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

68. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

69. During the relevant time frame, Experian received Plaintiff's disputes regarding the accuracy of the account reported by NFCU on Plaintiff's credit report.

70. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

71. Additionally, Experian unreasonably relied on information provided by NFCU, when readily verifiable information that Plaintiff provided in her dispute(s) placed Experian on notice that NFCU's information was inaccurate.

72. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

73. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

74. As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

### COUNT IV– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

75. Plaintiff incorporates by reference his allegations in paragraphs 1 – 4, 9 – 11, and 14 – 47 as if fully set forth herein.

76. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

77. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

78. During the relevant time frame, Experian received Plaintiff's disputes regarding the accuracy of the account reported by NFCU and/or SunTrust Bank on Plaintiff's credit report.

79. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

80. Any users of credit reports that viewed the NFCU account saw the Inaccurate information described herein.

81. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

82. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

83. As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EXPERIAN

84. Plaintiff incorporates by reference his allegations in paragraphs 1 – 4, 9 – 11, and 14 - 47 as if fully set forth herein.

85. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

86. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

87. During the relevant time period, Experian received Plaintiff's identity theft disputes which requested a block of the Navy Federal Account.

88. Plaintiff disputed the Navy Federal account on his Experian credit report, identified himself, advised Experian that the account was fraudulent, and furnished Experian with a copy of the identity theft report.

89. Rather than block the fraudulent information or request specific additional information from Plaintiff, Experian negligently and willfully disregarded its obligations under the FCRA by failing to block the Navy Federal account.

90. Alternatively, Experian failed to block the Navy Federal account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

91. Experian's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to U.S.C. 1681n.

92. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. 1681o.

93. As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, damage to his

reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

94. Plaintiff demands a trial by jury on all issues so triable.

Dated: August 2, 2023

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**
*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
eiman@sharminlaw.com
*Attorney for Plaintiff*