UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80644-ROSENBERG

FREDERICK H. MILLER,

    Plaintiff,

v.

NAVY FEDERAL CREDIT UNION,

    Defendant.
_____/

**ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Defendant's Motion for Summary Judgment at docket entry 83. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

This is a case involving a disputed item on a credit report, and the Plaintiff has brought this suit under the Fair Credit Reporting Act ("FCRA"), contending that the Defendant did not adequately investigate his attempts to repair his credit report. Dates are important to the Court's resolution of the Defendant's Motion, and so the Court's summary of the facts below focuses upon specific dates.

Factual Background[1]

In July of 2022, a third party, engaging in identity theft, opened a credit card account in the name of the Plaintiff at the Defendant's bank. DE 84 at 1. A few months later, November 19, 2022, the Plaintiff discovered the credit card account. *Id.* at 2. On that day, the Plaintiff disputed his ownership of the account with credit reporting agencies and the Defendant received notification

---

[1] These facts are undisputed.

of the same. *Id.* The "dispute code" that the Defendant received from the credit reporting agencies was "dispute code 1." *Id.* Dispute code 1 meant that the Plaintiff contended the account did not belong to him. *Id.* Pursuant to the FCRA, the Defendant had thirty days to respond to the Plaintiff's dispute. 15 U.S.C. § 1681i(a)(1). Prior to the expiration of the thirty days, the Defendant verified that the account information in its records matched[2] the Plaintiff's information and responded to the credit dispute by informing the credit reporting agencies of the same. DE 84 at 3.

The Plaintiff again disputed his ownership of the credit card account. *Id.* at 3-5. This time, on December 19, 2022, the Defendant was informed of the dispute with "dispute code 103." *Id.* at 4. Dispute code 103 meant that the Plaintiff contended that the account had been opened by an identity thief. *Id.* On December 28, 2022, the Defendant received another dispute from a credit reporting agency, again referencing dispute code 103. *Id.* Around the same time, December 28, 2022, the Defendant responded to the credit reporting agencies that the "account information [was] accurate." *Id.*

On January 10, 2023, the Defendant again received a credit dispute, and again the code was dispute code 103—an identity theft code. *Id.* at 6. Again, the Defendant responded by informing the credit reporting agency that the disputed information was accurate. *Id.* at 7. On January 30, 2023, however, the Defendant altered its position and concluded that the credit card account had been opened because of identity theft. *Id.* On February 2, 2023, the Defendant informed all credit reporting agencies of the same. *Id.* The Defendant so informed the Plaintiff on February 4, 2023. *Id.*

---

[2] The only difference between the Plaintiff's information and the account's information was the Plaintiff's address, a fact that is not relevant to the Defendant's Motion.

The Parties' Arguments

The Defendant argues that it is entitled to summary judgment because the Plaintiff had no opportunity to accrue damages. This is so, the Defendant argues, because it honored the Plaintiff's identity theft dispute before the deadline expired for it to respond. The Defendant's argument is premised upon four contentions. First, it cannot be liable for failing to investigate identity theft prior to a credit reporting agency notifying it that the Plaintiff had alleged identity theft. Second, once the Defendant *was* notified of possible identity theft, the deadline for the Defendant to respond was February 2, 2023. Third, the Defendant responded by February 2, 2023, granting the Plaintiff his requested relief (this is uncontested). Fourth and finally, the Defendant cannot be held liable for any damages that accrued prior to February 2, 2023. Thus, the Defendant contends the Plaintiff could not have suffered any damages as a matter of law. The Court discusses the first, second, and fourth contentions (which are contested) below.

Liability for the Plaintiff's November Credit Dispute

The Plaintiff argues that the Defendant should be held liable for failing to uncover the identity theft when the Defendant received dispute code 1 in November of 2022, but for the reasons set forth in the Defendant's Motion and Reply[3] the Court fails to see how the Defendant was required to undertake a reasonable investigation into identity theft before being informed (via the credit agency) of potential identity theft. *See Chiang v. Verizon New England*, 595 F.3d 26, 38 (1st Cir. 2010) ("The statute is clear that the investigation is directed to the information provided by the [credit reporting agency]."); *see also Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308 (S.D. Fla.

---

[3] The Court adopts and incorporates the reasoning and arguments in the Defendant's Motion and Reply as the decision of the Court on this issue.

3

2012); *Smith v. Nat'l Credit Sys., Inc.*, No. 13-CV-4219, 2015 WL 12681372, at *4 (N.D. Ga. Apr. 30, 2015) ("Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its records." (quoting *Howard v. Pinnacle Credit Servs, LLC*, No. 09-CV-85, at *3 (M.D. Ga. June 24, 2010)). Simply stated, for the Defendant to engage in a reasonable investigation into identity theft, the Defendant must first be informed, by the credit reporting agency, of the allegation of identity theft. That did not occur in November of 2022; it occurred in December of 2022—the next topic for discussion.

### The Deadline for the Defendant to Respond

The Defendant contends that the deadline for it to respond to the Plaintiff's identity theft dispute was February 2, 2023, but the Plaintiff contends that the deadline was somewhere around January 19, 2023—thirty days from the date the Defendant first received an identity theft dispute code. The parties' disagreement turns on 15 U.S.C. § 1681i(a)(1)(B)-(C), which provides:

> **(B) Extension of period to reinvestigate**
>
> Except as provided in subparagraph (C), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.
>
> **(C) Limitations on extension of period to reinvestigate**
>
> Subparagraph (B) shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be inaccurate or incomplete or the consumer reporting agency determines that the information cannot be verified.

Thus, under 15 U.S.C. § 1681i(a)(1)(B) the Defendant argues that it gained an additional fifteen days to respond to the Plaintiff's credit dispute because it "received more information from the

4

consumer" that was relevant to the reinvestigation; the Defendant received additional identity theft disputes and additional documentation.

The Plaintiff facially argues that the Defendant could not have availed itself of the additional fifteen days because of 15 U.S.C. § 1681i(a)(1)(C), but the Plaintiff fails to develop this argument. The Plaintiff fails to explain how the additional information that the Defendant received was inaccurate, incomplete, or unverifiable. In short, the Plaintiff fails to explain how the "information that was subject to reinvestigation" was inaccurate, etc. Instead, the information was found *to be accurate*. The Court is persuaded that the deadline for the Defendant to respond to the Plaintiff's identity theft dispute was February 2, 2023. And the Defendant did respond to the credit reporting agencies by that date, in the Plaintiff's favor. The only remaining question, then, is whether the Defendant is insulated from damages prior to that date.

<u>Damages Prior to February 2, 2023</u>

Because the Defendant indisputably responded to the credit reporting agencies incorrectly *prior* to February 2, 2023 (informing them that all account information was accurate), the Defendant necessarily relies upon its actions on February 2, 2023, to establish that it has no liability in this case. The Defendant relies upon the reasoning in the case of *Rambarran v. Bank of America*, 609 F. Supp. 2d 1253 (S.D. Fla. 2009). In *Rambarran*, the deadline for the defendant-bank to correctly respond to the plaintiff's credit dispute was in March of 2006. *Id.* at 1262. The defendant-bank did not do so. *Id.* However, the plaintiff's credit report was corrected (by some entity) in May of 2006. *Id.* The *Rambarran* court reasoned that the plaintiff could not base his damages on anything that happened prior to March or after May—the plaintiff's damages had to be based upon the narrowed interval of time. *Id.* Using the reasoning in *Rambarran*, the Defendant argues that

5

in this case there was no interval of time for the Plaintiff to accrue damages because the Defendant acted in the Plaintiff's favor on the day of the deadline, February 2, 2023. In response to this specific argument, the Plaintiff's Response is silent; the Plaintiff's Response does not even acknowledge *Rambarran* or the reasoning in *Rambarran*.

The Court rules in favor of the Defendant on this question for three reasons. First, the Court concludes that the Plaintiff has, as a matter of procedure, conceded the point to the Defendant through its failure to respond. *E.g., Carter v. BPCL Mgmt.*, No. 19-CV-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (holding that the failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to respond"). Second, the reasoning in *Rambarran* has been cited with approval by other courts. *See Bauer v. Target Corp.*, No. 12-CV-978, 2013 WL 12155951, at *13 (M.D. Fla. June 19, 2013) (citing *Rambarran* for the proposition that a "furnisher is not liable for any damages" prior to the deadline for a response). Third, if furnishers like the Defendant could be held liable for their reporting prior to the statutory deadline, it would create a perverse incentive for furnishers to *never* give consumers (and the credit reporting agencies) an answer as soon as an investigation concludes. Instead, furnishers would be incentivized to delay any response until the day of the deadline to account for the possibility that subsequent information or subsequent investigation could result in a different answer.

Because the Defendant responded in the Plaintiff's favor by the deadline, the Plaintiff had no opportunity to accrue damages, and the Defendant is entitled to summary judgment. *See Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (holding that the failure of a plaintiff to produce evidence of damages in FCRA cases mandates the entry of summary judgment). Therefore, for all of the foregoing reasons it is **ORDERED AND ADJUDGED** that

the Defendant's Motion for Summary Judgment [83] is **GRANTED**. All other pending motions are **DENIED AS MOOT**, and the Clerk of the Court shall **CLOSE THIS CASE**. The Defendant shall submit a proposed final judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov within three business days of the date of rendition of this Order.

    **DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 6th day of February, 2024.

_____
UNITED STATES DISTRICT JUDGE
ROBIN L. ROSENBERG